Today's cases will be called as previously announced. The times will be as allotted to council. The first case today is number 25-1340 and number 25-1544 Walter Wambugo Maturi v. Pamela J. Bondi. At this time would counsel for the petitioner please introduce herself on the record to begin. Good morning your honors and may it please the court Chelsea Eddy on behalf of the petitioner. Chief Barron may I please reserve two minutes for rebuttal? You may. Okay thank you. So this case essentially raises two primary claims. The first claim is past persecution on account of family specifically petitioner's relationship to his father and the presumption of well-founded fear of future persecution and the second claim is with regard to humanitarian asylum on account of other serious harm. So starting with the first claim past persecution on account of family the agency failed to consider petitioner's fear of the police that in that he'll be targeted by the Kenyan official to the police on account of his relationship to his father when the agency considered the whether the government rebutted petitioner's presumptive well-founded fear of future persecution. An asylum applicant can demonstrate asylum if they've demonstrated past persecution on account of a protected ground and that in turn triggers a presumption of well-founded fear of future persecution on account of that same statutory ground. Counsel? Yes. From reading the briefs and we'll obviously ask the government this but it seems that there isn't really a dispute about the legal standard and perhaps the big issue is whether this argument was exhausted. So I was just wondering if we could turn to that right away and I read the brief to the BIA and I see the quotes that you've included in your brief. They're obviously accurate representations but can you just address is it really enough for the BIA to have understood that that argument was being made because it's sort of a sentence here and a sentence there but not necessarily all in one place under the relevant legal standard as you've laid it out. So can you address for us what your best argument is and why it was fully preserved such that the BIA would have known the argument was being made? Of course. So I would we would first agree with your proposition that there is no dispute as to the legal standard and I know you said you did go through the BIA brief but I would just point to a few sentences on specifically on pages 95 and 96 of the administrative record where petitioner states that his risk come from the Mungiki itself and as described Supra from the police who may presume he is Mungiki on account of his family relationship to his father and his forced participation in an animal blood drinking ritual. He also on the previous page states that previous actions by Kenyan police against Mungiki members actual and imputed have resulted in serious violence. So it is throughout the fear of the police and tied to his ethnicity and his relationship to his father does run throughout the BIA brief and I think that the question I have though is when I look at the headings under which those arguments are made that that's sort of the source of my question. So for instance and please tell me if I'm wrong but the relevant heading would be at the bottom of page 94 and it talks about the IJ didn't properly review reasonably available country condition standards and respondents repeated history being denied adequate police protection. So is the heading really enough to let the BIA understand that the sentences that you've quoted are making the legal argument that you're now making to us? Regarding the standard? That it's about fear of the police as a separate type of harm because of I see yes a petitioner's position is that it is enough to raise that legal argument but the court also does not even have to get address whether the BIA actually knew the correct legal standard it could simply determine that the BIA erred in failing to address the fear of the police and so the fact that petitioner raises a fear of the police which is throughout his the both the brief and then I would also argue in in the underlying record evidence as well pretty pervasively the court could just address the or could vacate and remand on the failure to address the claim without having to address whether the BIA actually knew the correct legal standard. Just so I'm tracking this there's no claim of past persecution by the police. That's correct. So how does that affect what you just said? In other words what is the if the claim of fear of future harm from the police is not predicated on a presumption of a well-founded fear of being persecuted based on past persecution of this status. What would the claim at all even be with respect to the police? Just a pure forward-looking future harm claim? Is that even articulated? If I'm on if I'm understanding your question the with regard to the past persecution claim the harm by the police only needs to be on account of the same statutory ground that demonstrated the past persecution. I understand and you were saying to Judge Rickleman I thought maybe that wasn't articulated as the legal theory but nonetheless there was a claim of fear of harm from the police that wasn't addressed. If that's right I'm trying to understand what is that claim then? Is that a claim of just general future harm from the police based on what? I see you're saying. I do think the fear of the police on account of his family relationship is articulated in the brief. It said like as the quote that I just said his risks come from the Mungiki itself and from the police who may presume he is Mungiki on account of his family relationship. So then that and then so okay so I guess then there's if that was articulated are you suggesting even if we thought it wasn't articulated that that was tied to a presumption rooted in the past persecution nonetheless it's still a claim of fear of future persecution based on the police that wasn't addressed? I'm not sure I'm following their question but essentially. Well there's a claim of past persecution. Correct. The police were not involved in that past persecution. Correct. That generates a presumption of future persecution. Correct. You could be making a claim that's on that presumption. Okay. If you are with respect to the police now you're saying that presumption extends to when we consider the claim of the fear of future persecution from the police so you go in with an advantage because of the presumption. I thought you were saying to Judge Ruppelman even if we thought that all had not been articulated to the BIA there was still a contention about fear of persecution by the police on account of Mugigi status that was articulated to the BIA. Yes yes and I think I might have potentially not been clear in my answer to Judge Ruppelman so where I was where I was going with that was even if the court disagrees that there there's an exhaustion issue or that the BIA knew the legal standard and there's no issue regarding the legal standard we did the issue of fear of the police on account of his relationship to his father as tied to that past persecution claim that the BIA just failed to address that claim even assuming they did apply the correct legal standard and knew the correct legal standard and petitioner's position is that both of those claims are exhausted and addressed but if the court would not have to reach the legal standard issue and could just address the BIA's failure to address the police claim. I will also note however though with regard to the humanitarian asylum claim and other serious harm the police persecution in that sense does not have to be tied to a protected ground there is no nexus component there so if again if there's any exhaustion issue excuse me or nexus issue but the fear of the police is legitimate and real that could factor into the other serious harm and petitioner could still receive a humanitarian asylum on that ground and so so if so if I'm following your position is that what was preserved was the contention that there was a well-founded fear of future persecution by the police based on his status and that in assessing that there should be a presumption of the well-founded fear with respect to the police even though the police did not engage in the past persecution that's a preserved claim in your view correct okay and then second also preserved is an independent claim that even if he doesn't get the presumption there was still a well-founded fear of persecution claim based on the police based on his status correct correct and then third for the humanitarian there's also a wealth of a persecuting him that's based on that status yes those three are all you say preserved and none were addressed by the BIA correct yes anything else those are the main those are the primary claims yes can I just just to oh certainly stay on this issue just one just one more question on this you know again I'm just I'm just trying to figure out what is fair in terms of what the BIA could understood from this lengthy brief and the arguments that you were quoting to us in the pages you were citing again that the heading under which they come which was heading g in the brief is that that IJ misapplied the unwilling or unable to protect standard and was wrong in finding that the government is willing and able to protect this respondent and to my understanding that is when the discussion of the police targeting them his ethnicity comes in so it seems to me to have been framed even though there is discussion of his fear of the police it seems to be framed under a completely different legal argument which is was the government unwilling and unable to protect him so just to to sort of try one more time what is your best response why the particular legal claim that you're now making to us which is different it's not about the government being unwilling and unable to protect him which is part of a different you know different part of the analysis it's about just persecution by the police themselves why was that clearly made to the BIA given that heading could you just address the heading all right so I think you stated heading g and I would I would say that the arguments I was citing are under heading I which is at the bottom of page one page 94 of the administrative record that the IJ did not properly review reasonably available country condition standards nor the respondents repeated history of being denied adequate police protection coming to the wrongful conclusion that there is no reasonable fear of future persecution so yes I you are right that's there it's a different file I couldn't quite tell the subset I'm just being honest I couldn't tell if it was the subsection because there's no h yeah understandable but in any event neither one of those headings to me seem to be a framed in terms of the legal argument they're now making to us and I think that if I think that heading I think even if that doesn't raise the the that the BIA failed to apply the correct legal standard I think it still raises the BIA's failure to consider the protection failure to consider a petitioner's fear of the police and I especially given that it's under the no reasonable fear of future persecution so the heading does highlight that we're talking about his fear of future persecution and then later on within that heading twice discusses the fear of the police on account of his father's relationship to his father and his moon participation in the or alleged participation in the moon geeky tribe okay so you're focusing on the last clause and I that you think is enough to give the framing that you're now bringing to us correct yes okay yeah thank you okay can I ask you just one question on the legal standard yes if the past persecution is not committed by the entity that's now the source of the future persecution mm-hmm is it the case that the presumption of past persecution extends to our consideration of the likelihood of that future persecution occurring by that entity yes um your honor what establishes that so the legal standard is that the past persecution and the future persecution only have to be related on account of the same protected ground um and well that I understand but I the presumption of future persecution comes from the fact of the past persecution and it just seems there's a certain logic when x is responsible for the past persecution to presume that x will keep doing it unless somebody says otherwise but it seems a little different to say x persecuted me in the past therefore you should presume that I would fear y would do it in the future but why well we have no reason to think y has ever done it in the past so why would we presume y would do it in the future it's true that there's reason to think that status is the type of thing that is the subject of persecution but as to the new entity why would we presume that entity would engage in the persecution when it hasn't done so in the past um a few responses your honor I think first just looking at the the text of the regulation um it only focuses on whether the presumption to have a well-founded fear of future persecution is on the basis of the original claim and that language original claim is it depends how you slice it right it does yes and I think what justifies slicing it in the way you do which is as long as the claim relates to the status then we presume anybody will persecute on the basis of that status even if there's no indication that that entity has ever done persecution on that basis before doesn't seem to be very logical I would so I have a few responses um first just looking at the starting with like the text of the regulation the original claim is I is our interpretation is essentially referring back to the previous sentence where the uh the regulation states that past persecution um is demonstrated if the applicant shows persecution on account of and then it lists those uh five protected grounds and so on the basis of the those five protected grounds um and then similarly if you look down at the um subsection a where it discusses the fundamental change the department's burden uh to rebut that presumption based on a fundamental change in circumstances it only discusses the department's requirement to rebut on account of one of those five protected grounds and if person if the same persecutor was required you would presume that the department could also rebut by demonstrating the persecutor has changed if that was a requirement and then that interpretation that it's only the enumerated ground that's required is is further confirmed by several other sources we have the federal register which states that a person who has established past persecution on account of race religion nationality membership in a particular social group or political opinion shall be presumed to have a well-founded fear of future persecution on account of those same grounds and then the USCIS manual has a very similar quote but I think perhaps the most compelling also is the BIA case matter of AT it's the third case in that matter of AT series from 2009 and they specifically state that the persecutor the persecutor can be different they say the specific agent of future persecution need not necessarily be identical to the specific agent of past persecution and we agree with DHS that the respondent's claim does not fail because her past and future persecutors are not identical and so taking AT2 which is what was the dissimilarity in in matter of AT matter of AT was involving a woman who had undergone female genital mutilation FGM and she it actually happened at such a young age and she didn't remember who it was and then the future persecution was on it was her allegation which wasn't actually was based on for potential forced marriage to her cousin and potential violence that her father might engage in if she failed to go through with this forced marriage so the those persecutors are clearly different and I'll also point to a few other there's a couple other cases well one other in the FGM a few other in the FGM context where I think it was the third circuit and I believe the ninth circuit similarly found that the the petitioner had undergone FGM in one of the cases it was actually by they said the the persecutors were like three women from the tribe and then they remanded to the BIA to consider whether they would experience future persecution and they they clearly stated that the the protected ground was PSG in that case like a gender tribe PSG and the future persecutors were the future persecution was potentially like domestic violence sex trafficking rape and in those situations like if it's a domestic violence context the persecutor is probably going to be someone different than the person that committed the FGM and so the fact and they remanded for on that ground so really the nexus in that or the relational factor between the past and future persecution was that statutory ground rather than the persecutor if the court has no further questions we rest on our brief thank you thank you counsel at this time would counsel for the respondent please come to the podium and introduce yourself on the record to begin may it please the court andrea jivas on behalf of attorney general this court should deny the instant petition for review because substantial evidence supports the agency's denial of asylum and withholding of removal but before discussing the merits i'd like to focus on the fact that respondent believes these claims were not properly exhausted as judge rickleman mentioned petitioner has changed her claim or i'm sorry as judge rickleman focused on page 96 and focused on the repeated history of being denied adequate police protection that was the original claim before this before the agency and what is not the claim today and i'd like to go through the procedural history because i think it will highlight how petitioner has not exhausted his claim before the immigration judge petitioner appeals with council number one and says he fears returning to kenya because of his political opinion and religion he presents one particular social group a minor who must obey his father petitioner the ij asks for any other social groups he replies no the ij then petitioner testifies he says i'm applying for asylum i fear my father his family members and the community i come from he does not mention the police throughout the testimony his focus is on his father at the end of the direct testimony petitioner mentions my father my family my relative and then even mentions the police but there's no follow-up testimony then before the bia he has eight arguments in his notice of appeal none of which mentioned the police and when he was testifying before the immigration judge just to go back i'm sorry he talks about the police in the fact that his mother went to go report the incident with his father yet the police was not willing to protect him and that was the only claim that he could possibly say was raised before the immigration judge or the board um he talks about in in his 45 page appeal brief which judge ruckelmans mentioned um he mentions the police uh he fears the police and mentions this clear testimony this is on page 69 yet he never made he never has one record citation to anything regarding his clear evidence then he talks about the ij's failure to develop the record he mentions the police decline to investigate his claims that's sticking to the original position that if any this court could find regarding the police it would be that the police did not protect him which goes back to page the subsection judge ruckelman mentioned which was the claim of the repeated history of being denied adequate police protection that was his original claim that's not what he's arguing today he's arguing that the police will status on him that's a totally different claim he says that in the brief in his opening brief for his in his brief to the bia he's right in the 45 page appeal brief which on page 90 if i asked it this way if the bia had found the issue preserved would that have been error that would have been fact finding which then it would have had to go back excuse me to the ij if the bia had found the issue preserved on this record would that have been error by the bia yes because the ij didn't even focus on the police or mention it is that the question you're asking well i'm trying to you're the way you're framing this it's as if the bia made a finding of non-exhaustion no the bia said nothing because it's correct yeah so suppose it's just unclear whether it was exhausted if the bia had found it was preserved that wouldn't have been a mistake would have been a fair judgment on their part that it was properly raised to us and then we would consider it correct if the if the board but the bia didn't say one way or the other so one way to handle this might be to vacate and remand let the bia make a finding on whether it was exhausted or not if we're parsing various snippets of a brief there's language in it that does state the claim there's headings that suggest maybe that's not what was being said the bia rather than saying you're talking about police protection but that's not developed or that wasn't exhausted makes no statement whatsoever just doesn't even mention it they then fairly say well they just never considered that aspect of the claim since it wasn't addressed but it's in the brief we could just vacate and remand for the bia to address that aspect of it if it wants to find it waived it can't your honor so you could do that however the government strongly disagree that this wasn't ever in petitioner's claim it's petitioner's burden for relief they present their claims to the ij they present nothing about this police imputing mungiki status well they don't even mention when you say nothing they mention the police twice and they say that the police will impute that status not before the immigration judge it says the police did not protect us that is what the problem is then it goes to the board and then it talks about we have two different issues first questions was it raised to the bia in what bia didn't in the briefing to the bia in a 45 page appeal brief okay but mentioned a couple oh sorry your honor the bia did not find it was raised to the bia but not exhausted before the ij correct correct right so the before we get to the question of we can affirm the bia on the ground that it was not exhausted to the ij we would have to decide whether the claim was raised to the bia i thought you were arguing it was not raised to the bia it's not raised adequately to the bia okay we don't have a finding by the bia on that score correct there's just no reference to it correct yet the brief to the bia does state in a sentence the exact thing they're now saying to us which is that the police would attribute that status to the petitioner based on the father's familiar relation and persecute him in consequence yes there is a statement or two however there could also be viewed differently and say they're focused so why not point that out and let the bia address whether it did overlook it or whether it decides it was just not adequately developed and as waves since the bia hasn't said one thing or the other about that correct that is one path but the government would still argue that it has not been adequately raised i mean on page 65 and the introduction section of this appeal brief that we're speaking of it says sadly the immigration judge never heard respondents full narrative and if you go to the bottom the immigration judge did not know about the challenges the kenyan government faces in controlling the mungiki nor the police roundups without due process of perceived mungiki especially for political reasons petitioner in his introduction page is admitting that he was never raised the perceived mungiki to the board i'm sorry to the immigration judge in his appeal brief to the board so the board could have found waiver could it have overlooked the waiver if it there were so many arguments in this 45 page i mean could it have purposely ignored the way the the waiver and addressed the claim could the bia have addressed the claim it could have but i in the way that it was they didn't so our question is whether it's exhausted in front of the bia so that we can hear it but if the bia never even made a ruling on waiver i'm going back to chief judge barron's point why wouldn't we have them sort that out that is one avenue the court could take why wouldn't we have them do it because i don't even think you need to get there they didn't petitioner is filing is presented one claim before the ij the focus of his claim has always been my father the mungiki peers and the mungiki people and now they're saying that in the police whenever they focused on the police it has been in the way that it hasn't he fears they will not protect him from his father that's been the crux of his claim now they're coming before the court and changing the claim to the police are imputing the will impute the mungiki you say the court you mean us or the bia sorry the federal this court this court now it's coming before with a new claim i thought before the bia they specifically said what he fears is that the police will persecute him because they'll think he has that status based on his father that is not the government's position the government's position is that i'm not asking what the position of the government i'm just saying isn't that statement in the brief there's a few statements before the bia however it's a 45 page brief with 18 sub section arguments the board is evaluating all of the that brief and the way that the petitioner framed it even in the introduction was the immigration judge never heard it on page 65 and 66 council um i think what we're struggling with and as i understand your argument you're arguing to us the bia didn't even know the argument was there and therefore they had no reason to decide whether there was exhaustion or not or whether they should overlook it etc but what we're asking is given the bia silence and the fact that the brief does have sentences at least in several places as you acknowledge what what should we do it seems the question is basically was there enough in the brief that it seems that the bia should have addressed it and given that they didn't the prudent course for us would be to remand so i guess what i'm asking is in your view when is there enough to send it back to the bia because there's clearly more than nothing this is a brief where it wasn't raised at all in any way so can you help us sort that out correct and i think that that's the difference when you're having a 45 page brief there's motion to reconsider testimony from his mother and himself and very a few sentences mentioning mungiki i'm sorry the police imputing mungiki status as opposed to the crux of the claim and the hundreds of other pages in the records which not do not mention that i mean i guess the question is if this court finds those two sentences amongst all this other evidence where petitioner bears the burden of proof is enough and if the court would find that's enough then i guess they would have to go back to the board the government's position is that's not enough it was petitioner's burden of proof he presents his claim he mentions before the immigration judge of the police twice and always in the context of they did not protect me they mentioned in the opening pages of his brief to the board sadly the immigration judge never heard about the controlling the mungiki or the police roundups or the imputed status then he frames cites that those two sentences on page 96 regarding that that was enough to bring it to the board in a 45 page brief all this evidence if this were to find that those two sentences were enough then yes it would probably need to take it back to the board but again of all this evidence that petitioner bears the burn up there's two sentences can i ask you if we sent it back on this question of the legal standard with respect to the past persecution having been committed not by the police does the presumption of a well-founded fear of persecution then extend to our consideration of the likelihood of future persecution by the police no it would go to what has been presented before it which was in the government's position is the father the mungiki ceremony or peer and what about matter of at which suggests that it doesn't have to be identical even if the future persecutor hasn't engaged in the past persecution if there's evidence of the past persecution based on a certain status the presumption that that status will be the source of future persecution persists even as to a non-identical future persecutor for for in the terms of dhs rebutting the presumption is that what you're no your honor would have to be so the standard is that it must prove that the conditions have changed so dramatically as to undermine the well-foundedness of fear focusing um on what was the past persecution the police was never a focus of the past persecution it was his father again the mungiki ceremony and then the monkey how does that match up with matter of at which is what your opponent cited when i asked them the same question which is the bia decision that suggests the future persecutor needn't be the same actor that engaged in the past persecution as long as there's no indication that the same ground wouldn't be a source of concern and then we would go back to the change country conditions if they would include those the new source of harm as matter of at then you would go to the change country conditions which would support the claim that dhs has met its burden and just walk me through that a little bit how is that true with respect to the police well first of all the numerous um country conditions shows that the um first of all petitioner's christian and yes if he said if the court would say that he has exhausted his claim that the police would impute mungiki status to him even though majority of kenya is christian um there's several articles saying that mungiki no longer exists um the police have arrested mungiki members that would go to that claim but there's several articles saying it's no longer exists so you'd have to focus on the change country conditions but that would have to go back to the board to address that if this court would find that that claim has not been exhausted thank you council just to confirm that do you disagree um with the petitioner on the basics of the legal standard that the future the well-founded fear of future persecution does not have to be um in the same form or by the same individuals for them to still get for him to still get the benefit of the presumption yes let me just i would like to cite a case just one second your honor sure yes the mendez v garland which talks about the statue which talks about in the circumstances he no longer has a well-founded fear um so it wouldn't oh excuse me for the and once you would show dhs and i hope this is answered question please let me know if it's not then once dhs proves then it goes back to petitioner for it they spare the burden to show those new sources of harm so was that your question i think my question was a little different which is just the very basic legal standard on well-founded fear which i thought you agreed to and i just want to make sure that's true which is that the the well once there's there is a finding of past persecution as there was here the well-founded fear does not have to be from the same exact individual or in the same exact form of persecution oh exciting matter of at yeah do you agree do you agree yes do you agree with that no we the government would say that no that you have in order to overcome the past persecution and establish the well-founded fear it has to be the same sources of harm that your views it has to be the same the same individual or even that's your position no i'm sorry i don't think i'm understanding the question i apologize can sure let me try let me try one more time i understood the legal standard to be well established that once past persecution has been established as it was here that a well-founded fear of future persecution correct did not have to be fear of persecution by the same exact individual or the same exact type of harm correct yes sorry i'm not your honor i thought we were talking about something else my apologies thank you very much and if this court oh you agree with that i'm sorry i agree you agree with what judge rickleman just described the matter of at yes yes that it could be possibly other sources of harm okay however the government would not agree that that there are other sources of harm as a factual matter as a legal standard sorry yes sorry thank you thank you any other questions your honor no thank you thank you counsel at this time would counsel for the petitioner please reintroduce herself on the record she's a two-minute rebuttal chelsea eddie on behalf of petitioner um just to be brief with regards to exhaustion um exhaustion should be interpreted in favor of the petitioner that's a first circuit case senator v gonzalez which was cited in the reply brief and then if exhaustion is a concern for the court there is no exhaustion issue with regard to humanitarian asylum and receiving in which petitioner would has demonstrated past persecution and would receive humanitarian asylum if they demonstrate other serious harm so as there's no exhaustion issue the court would would be able to reach all the humanitarian asylum issues if there's a concern about that thank you thank you counsel that concludes argument in this case